**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MIRIAM FLORES, individually and as a parent of Miriam Flores, minor child; ROSA RZESLAWSKI, individually and as parent of Mario Rzeslawski, minor child,
*Plaintiffs-Appellants*,

v.

JOHN HUPPENTHAL, Superintendent of Public Instruction of the State of Arizona; STATE OF ARIZONA,
*Defendants-Appellees*,

SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES AND PRESIDENT OF THE ARIZONA SENATE,
*Intervenors-Appellees*.

No. 13-15805

D.C. No.
4:92-cv-00596-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted
January 12, 2015—San Francisco, California

Filed June 15, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Friedland

## SUMMARY[*]

### Equal Educational Opportunities Act

The panel affirmed the district court's order, on remand from the United States Supreme Court, granting a motion for relief under Fed. R. Civ. P. 60(b)(5) from a judgment for alleged violations of the Equal Educational Opportunities Act, and vacating an injunction granting statewide relief to a class of English Language Learners and their parents in Arizona's Nogales Unified School District.

The panel held that the district court complied with the Supreme Court's order and did not abuse its discretion in granting defendants' Rule 60(b)(5) motion because the circumstances surrounding the implementation and funding of English Language Learner programs at the state and national levels had changed substantially since 2000, when the judgment was entered, and the current programs constituted "appropriate action" under the EEOA.

The panel further held that plaintiffs had not shown that Arizona was violating the EEOA on a statewide basis, and the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

facts alleged by them were insufficient to justify the maintenance of a statewide injunction. The panel concluded the plaintiffs were not attacking the validity of a statewide policy; rather, they were challenging local implementation after the first year of a four-hour English Language Development requirement, and its alleged negative effects on English Language Learner students, some of whom might receive less academic content than their English-speaking peers. The panel held that plaintiffs did not demonstrate standing to raise statewide claims.

Judge Friedland concurred in Parts I.1-I.4 of the majority opinion, which addressed the motion for relief from judgment, and she concurred in the judgment. Judge Friedland agreed with the majority that the district court obeyed the Supreme Court's directives regarding how the remand in this case should proceed, and that the district court did not abuse its discretion in, accordingly, granting Rule 60(b)(5) relief to defendants. Judge Friedland wrote separately to address additional arguments she understood plaintiffs to be making. Judge Friedland would hold that although plaintiffs had standing to bring a facial challenge to the four-hour English Language Development model adopted for use statewide, this challenge failed on the merits. She also would hold that plaintiffs did not show that their new objections to the four-four model's implementation in Nogales constituted EEOA violations that required maintaining an injunction in Nogales.

**COUNSEL**

Timothy M. Hogan (argued), and Joy E. Herr-Cardillo, Arizona Center for Law in the Public Interest, Phoenix, Arizona, for Plaintiffs-Appellants.

Melissa Iyer (argued), and Michael Dulberg, Burch & Cracchiolo, P.A., Phoenix, Arizona, for Defendants-Appellees.

Thomas C. Horne, Attorney General, Leslie Kyman Cooper and Jinju Park, Assistant Attorneys General, Phoenix, Arizona, for Defendants-Appellees State of Arizona and members of the Arizona State Board of Education in their official capacity.

David J. Cantelme (argued), D. Aaron Brown, and Samuel Saks, Cantelme & Brown, P.L.C., Phoenix, Arizona, for Intervenors-Appellees.

Jocelyn Samuels, Acting Assistant Attorney General, Dennis J. Dimsey and Erin H. Flynn, Attorneys, United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., for Amicus Curiae United States.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiffs-Appellants are a class of English Language Learners (ELLs) and their parents (the Flores Plaintiffs) in Nogales Unified School District (Nogales). They appeal from the district court's order granting the Superintendent of Public Instruction for the State of Arizona, the State of Arizona, the Arizona State Board of Education, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate (collectively, the State Defendants) Rule 60(b)(5) relief from a judgment for alleged violations of the Equal Educational Opportunities Act (EEOA), 20 U.S.C. §§ 1701–21. The district court also vacated its earlier injunction granting the Flores Plaintiffs statewide relief because it determined that the Flores Plaintiffs had not established a "statewide" violation of the EEOA. In arriving at its decisions, the district court followed the instructions of the Supreme Court in *Horne v. Flores*, 557 U.S. 433 (2009).

On appeal, the Flores Plaintiffs argue that the district court erred because, 1) the four-hour English language requirement imposed on ELLs violates the EEOA because "it results in ELL students receiving less academic content than their English-speaking peers and the State neither provides, nor requires school districts to provide, ELL students with an opportunity to recover that missed content," and it segregates ELL students from their English-speaking peers "[if] the goal of proficiency within one year has not been achieved"; and 2) the Flores Plaintiffs "have standing to challenge a State-mandated policy intended to bring about a uniform method of English language instruction to all ELL students in all districts in Arizona."

We hold that the district court did not abuse its discretion in granting the State Defendants' Rule 60(b)(5) motion for relief from judgment because the circumstances surrounding the implementation and funding of ELL programs at the state and national levels have changed substantially since 2000, and the current programs constitute "appropriate action" under the EEOA. We further hold that the Flores Plaintiffs have not shown that Arizona is violating the EEOA on a statewide basis, and that the facts alleged by them are insufficient to justify the maintenance of a statewide injunction.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1992, the Flores Plaintiffs filed a class action suit on behalf of "all minority 'at risk' and limited English proficient children . . . now or hereafter, enrolled in the Nogales Unified School District . . . as well as their parents and guardians." *Horne v. Flores*, 557 U.S. 433, 439–40 (2009). The Flores Plaintiffs requested a declaratory judgment holding the State of Arizona, the Arizona State Board of Education, and the Superintendent of Public Instruction responsible for violating the EEOA, which provides in relevant part:

> No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by–
>
> . . .

(f) the failure by an educational agency to take *appropriate action* to overcome language barriers that impede equal participation by its students in its instructional programs.

20 U.S.C. § 1703 (emphasis added).

In 2000, after a bench trial, the district court concluded that the State Defendants[1] were violating the EEOA by providing insufficient funding to ELL students in Nogales. *Flores v. State of Arizona*, 172 F. Supp. 2d 1225 (D. Ariz. 2000). Later that year, Arizona voters passed Proposition 203, which implemented the "sheltered English immersion" (SEI) approach statewide, and required "nearly all classroom instruction" to be "in English but with the curriculum and presentation designed for children who are learning the language." Ariz. Rev. Stat. § 15-751(5).

In 2001, just days after Congress passed the No Child Left Behind Act (NCLB), 115 Stat. 1702, as added, 20 U.S.C. § 6842 *et seq*., the district court extended its original declaratory judgment statewide, "even though the certified class included only Nogales students and parents and even though the court did not find that any districts other than Nogales were in violation of the EEOA." *Horne*, 557 U.S. at 441; No. CIV 92-596TUCACM, 2001 WL 1028369, at *2 (D. Ariz. June 25, 2001). The state attorney general acquiesced in this statewide extension because of "the Arizona

---

[1] We note that plaintiffs originally sought relief against only "the State of Arizona, its Board of Education, and its Superintendent of Public Instruction." *Horne*, 557 U.S. at 441. The Speaker for the State House of Representatives and the President of the State Senate intervened in the suit as representatives of their respective legislative bodies in 2006. *Id*. at 443.

constitutional requirement of uniform statewide school funding." *Horne*, 557 U.S. at 442. In 2005, the district court held the State in contempt for failing to "appropriately and constitutionally fun[d] the state's ELL programs," and commanded the Arizona legislature (which at the time was not a party to the suit) to allocate more funds to ELL instruction, or be faced with contempt sanctions totaling millions of dollars per day. *Id*. at 441–42 (alteration in original) (internal quotation marks and citation omitted).

In March 2006, after accruing over $20 million in fines, the Arizona legislature passed House Bill 2064 (HB 2064), "which was designed to implement a permanent funding solution to the problems identified by the District Court order in 2000." *Id*. at 442. HB 2064 increased ELL incremental funding for ELL students, and created two new funds "to cover additional costs of ELL programming." *Id*. at 442–43. HB 2064 also established the Arizona English Language Learners Task Force (Task Force), which was charged with developing and adopting research-based models for ELL instruction using the structured English immersion approach. The statute directed the Task Force to "identify the minimum amount of English language development [ELD] per day for all models," but specified that "the task force shall develop separate models for the first year in which a pupil is classified as an English language learner that includes a minimum of four hours per day of English language development." A.R.S. § 15-756.01(C) (2006).

Shortly thereafter, the legislature intervened in the ongoing litigation to defend its interests, and requested an evidentiary hearing on a motion for Rule 60(b)(5) relief from judgment in light of the passage of HB 2064. *Horne*, 557 U.S. at 443. The district court denied the Rule 60(b)(5) motion,

finding that HB 2064 was fatally flawed (and inadequate) in its allocation of ELL funding for three reasons: the increase in funding "was not rationally related to effective ELL programming"; the bill imposed an "irrational" two-year limit on funding for each ELL student; and HB 2064 "violated federal law by using federal funds to 'supplant' rather than 'supplement' state funds." *Id*. at 443–44.

Our court vacated the district court's order, and remanded for an evidentiary hearing to determine whether Rule 60(b)(5) relief was warranted. *Id*. at 444. The district court again denied the Rule 60(b)(5) motion. We affirmed the order on appeal because petitioners had not shown "either that there are no longer incremental costs associated with ELL programs in Arizona," or that Arizona's "educational funding model was so altered that focusing on ELL-specific incremental costs funding has become irrelevant and inequitable." *Flores v. Arizona*, 516 F.3d 1140, 1169 (9th Cir. 2008).

The Supreme Court reversed. It observed that the decision had not addressed the "critical question in this Rule 60(b)(5) inquiry" of "whether the objective of the District Court's 2000 declaratory judgment order—*i.e.*, satisfaction of the EEOA's 'appropriate action' standard—has been achieved." *Horne*, 557 U.S. at 450. Instead, "the Court of Appeals used a heightened standard that paid insufficient attention to federalism concerns" by concerning itself "only with determining whether increased ELL funding complied with the original declaratory judgment order." *Id*. at 451. In other words, "the Court of Appeals framed a Rule 60(b)(5) inquiry that was too narrow—one that focused almost exclusively on the sufficiency of incremental funding," instead of "ascertain[ing] whether ongoing enforcement of the original

order was supported by an ongoing violation of federal law (here, the EEOA)." *Id*. at 452, 454.

The Supreme Court remanded the case to the district court with detailed instructions "for a proper examination of at least four important factual and legal changes that may warrant the granting of relief from the judgment: the State's adoption of a new ELL instructional methodology, Congress' enactment of NCLB, structural and management reforms in Nogales, and increased overall education funding." *Id*. at 459. Finally, the Court noted that "[t]he record contains no factual findings or evidence that any school district other than Nogales failed (much less continues to fail) to provide equal educational opportunities to ELL students," and questioned whether "the District Court had jurisdiction to issue a statewide injunction when it is not apparent that plaintiffs—a class of Nogales students and their parents—had standing to seek such relief." *Id*. at 470–71. Accordingly, the Court instructed the district court to "vacate the injunction insofar as it extends beyond Nogales unless the court concludes that Arizona is violating the EEOA on a statewide basis." *Id*. at 472.

On remand, the Flores Plaintiffs elected not to file a motion to expand the class. The district court held a three-week evidentiary hearing on the State Defendants' Rule 60(b)(5) motion, and allowed the Flores Plaintiffs to present evidence of a statewide EEOA violation. The Flores Plaintiffs argued that the State's "adoption of models requiring that ELL students be segregated for more than a year in four hours of daily English language development class . . . is not 'appropriate action' under the EEOA" because segregation

prevents ELL students from "acquir[ing] the academic credits necessary to graduate from high school within four years."[2]

After examining the four factors the Supreme Court identified as relevant to deciding the State Defendants' Rule 60(b)(5) motion, the district court granted the motion with respect to Nogales because "[e]normous changes have occurred in the method by which Arizona delivers English language instruction since judgment was entered in this case in 2000," including the advent of NCLB, the development of the State's general academic test known as the Arizona Instrument to Measure Standards (AIMS), and the implementation of an English proficiency test used to classify pupils as ELL students. The district court also observed that "the state has seen the election of a new Governor, a new Superintendent of Schools, and a new Attorney General," as well as numerous changes in the membership of the Arizona legislature. The district court concluded that the Flores Plaintiffs' "evidence from a few school districts" regarding implementation of the four-hour model was "not sufficient to establish standing to bring a statewide claim." In addition, "Plaintiffs' newly asserted claims are not 'statewide' in nature, but rather depend on specific implementation choices made at a district level, thus requiring a district-by-district analysis." Accordingly, the district court dismissed the statewide claims.

The Flores Plaintiffs filed this appeal.

---

[2] The Flores Plaintiffs originally alleged three statewide violations of the EEOA, including the manner in which ELL students are identified, and how the students' English proficiency is tested, but decided only to pursue the "implementation of the Four Hour Model across the state" on appeal.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review for abuse of discretion the district court's decision granting the State Defendants' Rule 60(b)(5) motion for relief from judgment. *United States v. Asarco, Inc.*, 430 F.3d 972, 978 (9th Cir. 2005). We review the district court's conclusions on questions of standing *de novo*. *Ellis v. City of Mesa*, 990 F.2d 1518, 1523 (9th Cir. 2003).

## DISCUSSION

The Supreme Court in *Horne* gave the district court detailed guidance for reviewing the State Defendants' motion for relief from judgment on remand. 557 U.S. 433, 447–72 (2009). We conclude that the district court complied with the Supreme Court's order, and that relief from judgment was properly granted.

## I.

The Flores Plaintiffs contend that Rule 60(b)(5) relief from judgment was not warranted because the state law that mandates public school policies and practices for ELLs throughout the State of Arizona continues to violate the EEOA.[3] They do not contest the district court's findings of fact. Instead, they find it "inexplicabl[e]" that the court

---

[3] The district court expressly "limit[ed] its review of the 60(b)(5) motion to Nogales" because it found that the "implementation decisions vary from district to district," and that "plaintiffs have not established any 'statewide' violation." Accordingly, we also limit our review of the district court's ruling on the State Defendants' Rule 60(b)(5) challenge to Nogales.

"concluded that the Task Force models, with their four hour ELD requirement, did not violate the EEOA." We consider the Flores Plaintiffs' arguments in turn.

Rule 60(b)(5) permits a court to relieve a party from final judgment if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). A court abuses its discretion when it refuses to modify an injunction or consent decree in light of "a significant change either in factual conditions or in law" that "renders continued enforcement detrimental to the public interest." *Horne*, 557 U.S. at 447 (internal quotation marks and citations omitted). The abuse-of-discretion standard is,

> highly deferential to the trial court. Under this standard of review, we cannot simply substitute our judgment for that of the district court, but must be left with the definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors.

*United States v. Roston*, 986 F.2d 1287, 1291 (9th Cir. 1993) (internal quotation marks omitted).

The Supreme Court admonished the district court for failing to engage in the proper analysis when it denied the State Defendants' initial Rule 60(b)(5) motion, "ask[ing] only whether petitioners had satisfied the original declaratory judgment order through increased incremental funding," thereby "disregard[ing] the remand instructions to engage in a broad and flexible Rule 60(b)(5) analysis as to whether

changed circumstances warranted relief." *Horne*, 557 U.S. at 456–57. It also criticized our court for affirming the district court's order, and "improperly substitut[ing] its own educational and budgetary policy judgments for those of the state and local officials to whom such decisions are properly entrusted." *Id*. at 455. In other words, the "critical question in this Rule 60(b)(5) inquiry is whether the objective of the District Court's 2000 declaratory judgment order—*i.e.*, satisfaction of the EEOA's 'appropriate action' standard—has been achieved." *Id*. at 450.

As we have previously stated, "[b]ecause Section 1703(f) was proposed as an amendment from the floor of the House, there is very little legislative history" to shed light on "the scope of the 'appropriate action' requirement" in the EEOA. *Guadalupe Org. Inc. v. Tempe Elementary School Dist.*, 587 F.2d 1022, 1030 (9th Cir. 1978). "The interpretation of floor amendments unaccompanied by illuminating debate should adhere closely to the ordinary meaning of the amendment's language." *Id*.; *see also Castaneda v. Pickard*, 648 F.2d 989, 1001 (5th Cir. 1981). The Supreme Court has instructed that the ordinary meaning of "appropriate action" requires a State to "(1) formulate a sound English language instruction educational plan; (2) implement that plan; and (3) achieve adequate results." *Horne*, 557 U.S. at 459, n.8 (citing *Castaneda*, 648 F.2d at 1009–10). Determining whether the State is taking "appropriate action," and whether relief from judgment is therefore warranted, requires attention to "federalism concerns," which are "heightened when, as in these cases, a federal court decree has the effect of dictating state or local budget priorities." *Id*. at 448.

In this case, "the lower courts . . . misperceived both the nature of the obligation imposed by the EEOA and the

breadth of the inquiry called for under Rule 60(b)(5)." *Horne*, 557 U.S. at 459. To avoid further confusion, the Supreme Court gave careful guidance concerning  each of the four factors that could warrant Rule 60(b)(5) relief on remand, and the district court made numerous factual findings concerning each of those factors.

## 1. The State's Adoption of New ELL Instructional Methodology

The Supreme Court directed the district court to consider the State's adoption of a new ELL instructional methodology, which the Court noted appears "significantly more effective than bilingual education . . . . In light of this, a proper analysis of petitioners' Rule 60(b)(5) motion should include further factual findings regarding whether Nogales' implementation of SEI methodology—completed in all of its schools by 2005—constitutes a 'significantly changed circumstance' that warrants relief." *Horne*, 557 U.S. at 461.

In response, the district court considered a number of developments concerning the first factor. It found that in 2000, Arizona voters approved Proposition 203, A.R.S. §§ 15-751–15-755, which changed the primary method of ELD in Arizona from a bilingual education model to SEI. Proposition 203 established a one-year goal for ELLs to become proficient, and required annual testing and monitoring of the ELL program. A.R.S. §§ 15-752, 15-755. The shift from bilingual education to the SEI methodology required that all ELL students be placed in English language classrooms and taught only in English. A.R.S. § 15-752.

Proposition 203 initially left the implementation of the SEI model to the individual school districts, but in 2006, the

Arizona legislature passed HB 2064. A.R.S. §§ 15-756–15-756.13. HB 2064 established an ELL Task Force charged with developing a research-based model of ELL instruction in SEI methodologies, including a minimum of four hours of daily instruction in ELD for the first year, with the Task Force to determine the number of hours in each year thereafter (A.R.S. § 15-756.01); it delegated the duty of identifying ELLs to the Superintendent of Public Instruction (A.R.S. § 15-756); it required that the models be research-based, with consideration paid to the size, location, grade levels, and number of ELLs at the school (A.R.S. § 15-756.01); it required all school districts to adopt the Task Force's model, or submit an alternative model for approval (A.R.S. § 15-756.02(B)); it mandated a uniform method of assessing and reclassifying ELL students, and for monitoring reclassified students two years after exiting the program (A.R.S. § 15-756.06); it required at least annual testing of ELLs to determine whether they should be re-classified as "English proficient" (A.R.S. § 15-756.05(A), (B)); it created the Office of English Language Acquisition Services, which was to monitor the school districts' implementation of and compliance with the models (A.R.S. § 15-756.07); and it required the Task Force to refine the models yearly, as necessary (A.R.S. § 15-756.01).

The Task Force met thirty-one times between September 2006 and September 2007, accepted drafts of proposed models, consulted experts, and held public hearings before choosing a model. The Task Force model groups students by proficiency, and for four hours each day, requires content that "emphasizes the English language itself" rather than "other types of instruction, e.g. math, science, or social science." However, "[a]cademic content can be used as a vehicle for delivering ELD . . . ." As the district court observed, "[t]he

extent to which ELL students in the four hours of ELD are exposed to academic content can vary from school district to school district and from school to school within a school district" because "[t]he state does not prescribe the kind of academic content that should be used as a vehicle for delivering English Language Development at various grade levels and the teachers have the flexibility to use the materials that they want."

## 2.  Congress's Enactment of No Child Left Behind

The Supreme Court also instructed the district court to consider whether the enactment of NCLB "constitute[s] a significantly changed circumstance, warranting relief." *Horne*, 557 U.S. at 465. It noted that the "original declaratory judgment order," which "withdr[e]w[] the authority of state and local officials to fund and implement ELL programs that best suit Nogales' needs . . . conflict[s] with Congress' determination of federal policy." *Id*. The Court found the enactment of NCLB "probative in four principal ways": (1) it prompted the State to institute significant structural and programming changes in its delivery of ELL education; (2) it significantly increased federal funding for education in general and ELL programming in particular; (3) through its assessment and reporting requirements, it provides evidence of the progress and achievement of Nogales' ELL students; and (4) it makes a shift in federal education policy. *Id*. at 463–64.

The district court undertook its analysis of this factor as directed by the Supreme Court. It concluded that NCLB "has made four major changes to the delivery of ELD in Nogales and throughout Arizona: (A) the development of the ELP [English Language Performance standards], (B) the adoption

of Annual Measurable Achievement Objectives ("AMAOs"), (C) accountability for failure to achieve AMAOs, and (D) increased funding." The district court noted that, "In 2009, Nogales met its Annual Yearly Progress (AYP) requirements as required by NCLB by reclassifying more than 15% of its ELL students." In addition, NCLB "devises an elaborate accountability structure for a district's failure to achieve AMAOs, including the requirement of corrective action, NCLB § 1116(b)(7), and sanctions starting at decreased funding and culminating in a takeover of failing schools. NCLB § 1116(b)(8)."

### 3. Structural and Management Reforms in Nogales

As to the third change—structural and management reforms in Nogales—the Supreme Court made clear that it was "error" for "both courts [to] refuse[] to consider that Nogales could be taking 'appropriate action' to address language barriers even without having satisfied the original order" through, for example, Nogales superintendent "[Kelt] Cooper's structural, curricular, and accountability-based reforms." *Horne*, 557 U.S. at 466–67. Accordingly, the district court found that "[b]eginning with Superintendent Cooper and continuing with Superintendent McCollough, Nogales has implemented substantial structural and management reforms that have significantly elevated its performance." Nogales' teacher salaries are now "competitive within Arizona, and very competitive within its region," and it is "no longer the case" that Nogales has "inadequate teaching materials for both content and ESL classes." Nogales "created a centralized textbook adoption program, which addressed the Court's concerns regarding the adequacy of teaching materials," and "established various

compensatory education programs including summer school and after-school tutoring."

## 4. Increased Overall Education Funding

Finally, the district court turned to the issue of funding, the factor that lay at the heart of its earlier orders holding Arizona in violation of the EEOA. The Supreme Court noted that the "five sources of funding that collectively financed education in the State" at the time the original declaratory judgment was entered "have notably increased since 2000," and constitute "[a] fourth potentially important change . . . in Nogales." *Horne*, 557 U.S. at 468. On remand, the district court acknowledged the "several income streams" by which Arizona funds local education, and carefully examined the funding changes statewide, and in Nogales. Statewide equalization funding (intended to make sure all districts are on a level playing field) increased from $3.413 billion in 2000 to $5.776 billion in 2010. As a result of NCLB, Arizona's share of Title I funding increased from $359,247,997 in 2000 to $582,931,537 in 2010. The 2009 American Recovery and Reinvestment Act "sent about one and a half billion dollars in FY 2010 for education purposes" "[f]or Arizona alone." In 2000, Nogales voters approved a budget override, "and the funds it has generated have increased from $895,891 in FY 2001 to $1,750,825 in FY 2010." Funding per pupil in Nogales increased by 44% over the past decade, from $3,675 in 2000 to $5,306 in 2010. The court concluded that "Nogales has an effective ELD program. Its FEP-2s [students who have reclassified as proficient for two years] rank higher on AIMs reading, writing, and mathematics at all elementary and middle grades," and "[i]ts reclassification rates consistently have placed at the top or near the top of nine sister districts at the border."

We conclude that the district court carefully followed the Supreme Court's instructions on remand, and did not abuse its discretion in determining that in light of the changed circumstances in Nogales and in the State over the course of more than a decade, Rule 60(b)(5) relief was warranted.

## II.

We turn now to the question of whether the Flores Plaintiffs have alleged a statewide violation of the EEOA. Our conclusion that Rule 60(b)(5) relief was properly granted because the State Defendants' ELL programs in Nogales constitute "appropriate action" under the EEOA prefigures our conclusion that Arizona is not violating the EEOA on a statewide basis. As the State Defendants observe, the expansion of the injunction statewide "was made solely as a means (disagreed with by the Supreme Court) of affording effective relief in [Nogales]. Thus, with [Nogales]'s shortcomings having been fixed, and with it now conducting an effective ELD program, the rationale for granting statewide relief collapses." Nevertheless, because the Supreme Court instructed the district court, if "press[ed]," to determine whether "Arizona is violating the EEOA on a statewide basis," we proceed with an analysis of the Flores Plaintiffs' statewide claims on appeal.

We note initially that the Flores Plaintiffs represent only a class of Nogales students and their parents. The class was never certified to extend statewide, and the Flores Plaintiffs declined to seek an expansion of the class. It appears that the district court undertook no standing analysis when it extended its injunction to apply statewide. In its discussion of the district court's entry of statewide relief, the Supreme Court observed that

[t]he record contains no factual findings or evidence that any school district other than Nogales failed (much less continues to fail) to provide equal educational opportunities to ELL students. . . . Nor have respondents explained how the EEOA could justify a statewide injunction when the only violation claimed or proven was limited to a single school district. See [*Missouri v.*] *Jenkins*, 515 U.S.[ 70,] 89–90 [(1995)], 115 S. Ct. 2038; *Milliken* [*v. Bradley*], 433 U.S.[ 267,] 280 [(1977)], 97 S. Ct. 2749. It is not even clear that the District Court had jurisdiction to issue a statewide injunction when it is not apparent that plaintiffs—a class of Nogales students and their parents—had standing to seek such relief.

*Horne*, 557 U.S. at 470–71. Accordingly, "[a]ssuming that petitioners, on remand, press their objection to the statewide extension of the remedy, the District Court should vacate the injunction insofar as it extends beyond Nogales unless the court concludes that Arizona is violating the EEOA on a statewide basis." *Id.* at 472.

On remand, the district court permitted the Flores Plaintiffs to present evidence of a statewide violation of the EEOA that would justify the continued enforcement of the statewide remedy. The district court concluded that, "Plaintiffs' newly asserted claims are not 'statewide' in nature, but rather depend on specific implementation choices made at the district level." We hold that the district court properly dismissed the Flores Plaintiffs's statewide claims because the Flores Plaintiffs are not attacking the validity of

a statewide policy; rather, they are challenging local implementation after the first year of the four-hour English language requirement, and its alleged negative effects on ELL students, some of whom may receive less academic content than their English-speaking peers.[4]

In *Jenkins*, the Court made clear that, "[T]he nature of the . . . remedy is to be determined by the nature and scope of the . . . violation." *Jenkins*, 515 U.S. at 89 (alteration in original); *see also Horne*, 557 U.S. at 470–71. "The proper response to an intradistrict violation is an intradistrict remedy . . . ." *Jenkins*, 515 U.S. at 90. "[O]nly if there has been a systemwide impact may there be a systemwide remedy," *Lewis v. Casey*, 518 U.S. 343, 359–60 (1996) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (alteration in original)). In other words, in order to seek statewide relief on behalf of all ELL students in Arizona, the Flores Plaintiffs must demonstrate "widespread actual injury," not just "isolated instances of actual injury," as a result of Arizona's alleged violation of the EEOA. *See Lewis*, 518 U.S. at 349. This requirement "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349. Article III standing requires, (1) that the plaintiff have suffered a concrete and particularized "injury in fact," which is neither speculative nor conjectural; (2) that there be a causal connection between the injury alleged and the

---

[4] The Flores Plaintiffs are not making a separate claim that the model's segregation of ELL students violates the Fourteenth Amendment. In fact, the Flores Plaintiffs disclaim this theory. Instead, they argue that segregating students after the first year violates the EEOA because it denies them access to the same academic content as their non-ELL peers. This claim is therefore an alternative argument for why Arizona's four-hour ELD model violates the EEOA.

challenged conduct; and (3) that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And when plaintiffs seek a systemwide injunction for widespread wrongs, they must demonstrate that the expansive scope of the injunction sought is no broader than necessary to remedy the "inadequacy that produced the injury in fact that the plaintiff has established." *Casey*, 518 U.S. at 357. This is because

> standing is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law.

*Lewis*, 518 U.S. at 358 n.6 (1996).

The Flores Plaintiffs argue that they have standing to raise statewide claims because of "the inevitability of the statewide impact that any ruling on the Plaintiffs' claims, favorable or unfavorable, will have." However, the possible effects of a speculative, future court-ordered remedy are insufficient to confer standing on the Flores Plaintiffs to bring their statewide claim in the first instance. *See Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) ("When evaluating whether these three elements are present, we must look at the facts *as they exist at the time the complaint was filed*.") (internal quotation marks omitted) (emphasis in original). The Flores Plaintiffs have not established "widespread actual injury" as a result of

Arizona's alleged violation of the EEOA, *Lewis*, 518 U.S. at 349, and therefore, have not "explained how the EEOA could justify a statewide injunction," *Horne*, 557 U.S. at 470.

The Flores Plaintiffs appear to be challenging the four-hour model as facially violating the EEOA because Arizona does not require districts "to provide ELL students with an opportunity to recover missed academic content." In reality, they are attacking the *implementation* of the four-hour model, and its alleged negative effects on ELL students. Indeed, the Flores Plaintiffs admit that they are not challenging the model as applied to all ELL students: "Plaintiffs believe that the models should be given a chance to work for first year English language learners as the Legislature prescribed." Instead it is the "[c]ontinued placement of elementary and high school students in the four hour model after the first year [that] constitutes a failure to take 'appropriate action' . . . ."

The Flores Plaintiffs' chief complaint is that the four-hour model is defective (*i.e.*, does not constitute "appropriate action" under the EEOA) because "[t]he state does not require school districts to provide ELL students with an opportunity to recover the academic content that they missed while they were in the four hour model and makes no effort to determine whether ELL students have been deprived of academic content as a result of being placed in four hours of ELD." But the EEOA imposes no such requirement on the school districts; it requires only that a State "'take appropriate action to overcome language barriers' without specifying particular actions that a State must take. . . . Congress intended to leave state and local educational authorities a substantial amount of latitude in choosing the programs and techniques they would use to meet their obligations under the EEOA." *Horne*, 557 U.S. at 440–41 (quoting *Castaneda v.*

*Pickard*, 648 F.2d 989, 1009 (5th Cir. 1981)); *cf. Guadalupe*, 587 F.2d at 1030.

The record is replete with evidence that underscores the extent to which implementation of this model—and more specifically, the academic content that ELL students receive—varies from district to district. For example, Humboldt Unified School District incorporates academic standards promulgated by the State into its ELL curriculum, and delivers content-based instruction that conforms to those standards. It also provides before-and-after-school programs, as well as summer school classes, to deliver academic content to ELL students.[5] Amphitheater High School in the Amphitheater Public School District works with ELL students to place them in mainstream core classes, like math, at the same time that they are learning English in four-hour blocks. This district-by-district implementation of a general, State-mandated educational framework is consistent with the requirements of the EEOA. Such local variation makes it impossible for the Flores Plaintiffs to establish a widespread, homogeneous injury sufficient to justify statewide injunctive relief.

The Flores Plaintiffs also contend that "segregation" of ELL students beyond the first year violates the EEOA because, by definition, it is not necessary to achieve

---

[5] As the Flores Plaintiffs note, HB 2064 limits "'compensatory instruction' outside the regular school day . . . to English language instruction and does not include providing instruction to ELL students in academic content areas that they may have missed as a result of participating in the Task Force models." However, this does not change the fact that, as with the standard four hours of ELD instruction during the school day, the amount of core academic content disseminated during compensatory instruction varies by school district.

Arizona's stated academic goal of proficiency within one year. They frame the injury that stems from this alleged violation as a denial of ELL students' educational opportunities. The argument is therefore duplicative of their contention that the four-hour English language requirement violates the EEOA because it results in ELL students receiving less academic content than their English-speaking peers. This injury cannot provide a basis for a statewide remedy because the four-hour model is implemented differently across the State. For example, the model explicitly allows ELL students who have achieved an "intermediate" level of English proficiency and have passed certain tests to be excused from up to two hours per day of ELD instruction. A.R.S. § 15-752(A) permits schools and districts to request approval of an alternative model, which in the case of Glendale Union High School has resulted in a program that allows juniors and seniors who are on track to graduate and who meet certain other requirements to be exempted from one to two hours of ELD instruction.

The Flores Plaintiffs are not arguing that four hours of ELD instruction violates the EEOA per se, but rather that the State is violating the EEOA through proficiency grouping after the first year, and by not also requiring districts "to provide ELL students with an opportunity to recover missed academic content." These are not statewide claims; instead, they contemplate alleged injuries that result from the implementation of the four-hour model, which varies from district to district, and cannot form the basis of claims for statewide injunctive relief.

## CONCLUSION

The Supreme Court gave clear instructions to the district court on remand. We conclude that the district court carefully followed those instructions. It was not an abuse of discretion to grant the State Defendants' Rule 60(b)(5) motion because changed circumstances warrant granting the State Defendants relief from judgment. Likewise, the Flores Plaintiffs have not alleged a statewide violation of the EEOA that is adequate to justify the continued enforcement of a statewide injunction.

The pending motions are denied as moot. Each party shall bear its own costs on appeal.

**AFFIRMED.**

FRIEDLAND, Circuit Judge, concurring in Parts I.1–I.4 of the majority opinion, and concurring in the judgment:

I agree with the majority that the district court obeyed the Supreme Court's directives regarding how the remand in this case should proceed, and that the district court did not abuse its discretion in, accordingly, granting Rule 60(b)(5) relief to Defendants.  I nevertheless write separately because I understand Plaintiffs to be making additional arguments not addressed by the majority, and I believe their arguments merit a response.  Specifically, I understand Plaintiffs to be arguing that, on its face, the four-hour English Language Development ("ELD") model adopted by the state Task Force violates the Equal Educational Opportunities Act ("EEOA") because it requires "segregation" of English Language Learners ("ELLs") for four hours per day even after their first

year of ELD instruction.  I also understand Plaintiffs to be arguing that, even if the original statewide injunction is no longer justified, an injunction should remain in place in Nogales because Nogales's implementation of the four-hour ELD model results in loss of academic content and unnecessary segregation for ELLs and thus violates the EEOA.

In response to those arguments, I would hold that although Plaintiffs have standing to bring a facial challenge to the four-hour ELD model adopted by the Task Force for use statewide, their challenge fails on the merits.  Further, I would hold that Plaintiffs have not shown that their new objections to the four-hour model's implementation in Nogales constitute EEOA violations that require maintaining an injunction in this case.

## I.

Plaintiffs argue that the "four hour ELD requirement beyond the first year violates the EEOA because the degree of segregation required by the State is not necessary to achieve the State's academic goal of proficiency in one year." I understand this to be a facial challenge to the statewide imposition of the four-hour ELD model.

In my view, Plaintiffs have standing to bring such a facial challenge.  Plaintiffs have described a concrete and particularized "injury in fact" because they are subject to the four-hour model, and thus to its requirement that they learn English in a separate classroom. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  That injury is caused by the four-hour model, and it is likely that changing the model would lead Nogales to change its ELD program, so the

causation and redressability requirements for standing are also met. *See id.* at 560–61. That Plaintiffs are all from Nogales does not prevent them from having standing to facially challenge what is effectively a state law, because the statewide requirement impacts them personally. *See Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1280–81 (9th Cir. 2003) (per curiam) (holding that the plaintiffs had standing to challenge a statewide rule governing primary elections, even though primary elections were administered at the county level); *Burdick v. Takushi*, 937 F.2d 415, 417–18 (9th Cir. 1991) (holding that the plaintiff had standing to challenge a statewide prohibition on write-in voting that affected him personally, even though an "order striking down the prohibition may apply to races in which [he could not] vote").

On the merits, however, this facial challenge fails. It is not impermissible segregation to group students by language ability as long as there is a legitimate educational reason for doing so. *See Castaneda v. Pickard*, 648 F.2d 989, 998, 1009 (5th Cir. Unit A June 1981). We owe deference to state educational experts' opinions, including the Task Force members' determination here that students learn English best when taught in a separate classroom. *See Horne v. Flores*, 557 U.S. 433, 468 (2009) ("The EEOA's 'appropriate action' requirement grants States broad latitude to design, fund, and implement ELL programs that suit local needs and account for local conditions."); *Castaneda*, 648 F.2d at 998, 1009 (recognizing that school districts have discretion to decide whether language ability grouping is appropriate); *cf. LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 988 (9th Cir. 2001) (recognizing the "substantial deference" owed to educators in the First Amendment context because "[t]he daily administration of public education is committed to school

officials"). It was not unreasonable for the Task Force to conclude that separating students by language proficiency for up to four hours each day would enable ELLs to develop their English language skills most quickly. Indeed, Plaintiffs do not even dispute this general principle. As the majority observes, Plaintiffs admit that they are not challenging the four-hour model as applied to first-year ELLs. Plaintiffs offer no support for their proposed distinction between the first and subsequent years of ELD—either in terms of why studying in a separate classroom becomes less helpful for language acquisition after the first year or in terms of why this separation becomes more harmful. Their facial challenge to the statewide requirement that ELLs receive English instruction in a separate classroom after the first year is therefore unavailing.

## II.

I understand Plaintiffs to be making the additional argument that Nogales's implementation of the four-hour model violates the EEOA by providing insufficient access to academic content for ELLs and by separating ELLs from their mainstream peers more than is necessary to teach them English. These arguments differ from Plaintiffs' original claim in this lawsuit (that Nogales's inadequate funding of ELD violated the EEOA), and Plaintiffs' new arguments are not clearly addressed by the four considerations that the Supreme Court articulated in response to the original funding-based claim.[1] *Horne*, 557 U.S. at 459. As students from

---

[1] Although these claims were not part of Plaintiffs' original lawsuit, and although Plaintiffs presented these arguments in the district court primarily as statewide challenges to the four-hour ELD model, the district court explicitly reached these arguments, construing them as challenges

Nogales, there is no question that Plaintiffs have standing to make these arguments. On the current record, however, the challenges to the implementation of the four-hour model in Nogales fail on the merits.

With regard to ELLs' access to academic content in Nogales, the district court found that "Nogales has an effective ELD program." Based on the performance of former ELLs in Nogales, this factual finding was not clearly erroneous. Former ELLs who have been classified as English-proficient for at least two years ("FEP-2s") met or exceeded state and district averages on AIMS tests in almost all subject-grade combinations in 2006–2009—all of the years for which AIMS data are available in the record.

The district court also appropriately found that Nogales provides substantial support for ELLs and former ELLs to compensate for any diminished exposure to academic content resulting from ELD. For example, Nogales offers summer school and after-school tutoring. These programs cover academic subject areas beyond English, including support for science and math. The fact that FEP-2s in Nogales had a high school graduation rate over 90% each year between 2006 and 2010 also supports the conclusion that ELLs are eventually exposed to necessary academic content.

With regard to their segregation allegations, Plaintiffs argue that, pursuant to guidance provided by the Department of Education's Office for Civil Rights ("OCR"), Nogales's

---

to Nogales's implementation of the Task Force model. Defendants have not argued that Plaintiffs waived these Nogales-specific arguments by not presenting them more distinctly below, or by not raising them earlier in the litigation.

implementation of the four-hour model violates the EEOA because it is not "the least segregative manner" of ELD. "Dear Colleague" Letter from U.S. Dep't of Justice, Civil Rights Div., and U.S. Dep't of Educ., Office for Civil Rights 22 (Jan. 7, 2015), *available at* http://www2.ed.gov/about/ offices/list/ocr/letters/colleague-el-201501.pdf.   The OCR letter interprets the EEOA as requiring schools to "avoid unnecessary segregation of" ELLs, and opines that a program that separated ELL from non-ELL students "in subjects like physical education, art, and music" or "during activity periods outside of classroom instruction" probably would violate this requirement.  *Id.*  Assuming that the OCR letter correctly interprets the EEOA, Plaintiffs have not put forward evidence showing that implementation of the four-hour model in Nogales results in language-ability-based grouping for more than the ELD portion of the day.  To the contrary, Defendants have presented evidence that ELLs in Nogales participate in extracurricular activities alongside non-ELLs, and that former ELLs have access to the full academic curriculum.

\* \* \*

The record does not contain enough years of ELL performance data after the implementation of the four-hour model to be certain of the model's effectiveness at teaching English or of its long-term impact on overall academic success. The district court appropriately concluded, however, that, based on the evidence that does exist, Plaintiffs could not show their new challenges to the implementation of the four-hour model in Nogales require maintaining an injunction.

If evidence of an EEOA violation emerges in the future, a new lawsuit could of course be brought.  But the district

court here correctly concluded that the current lawsuit "is no longer the vehicle to pursue the myriad of educational issues" about which Plaintiffs are concerned. The district court appropriately concluded that the injunction imposed in this lawsuit is no longer justified by Plaintiffs' original claims, and that their new claims fare no better. The district court therefore did not err in vacating the injunction.