*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES HENRY BINGMAN, SR., | ) | |
| | ) | Supreme Court No. S-16041 |
| Appellant, | ) | |
| | ) | Superior Court No. 3DI-13-00107 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CITY OF DILLINGHAM, | ) | |
| | ) | No. 7118 - August 12, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, Pat L. Douglass, Judge.

Appearances: James Henry Bingman, Sr., pro se, Dillingham, Appellant. Charles A. Cacciola, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A delinquent taxpayer sought to redeem his foreclosed property by offering the city a promissory note for the amount due, without interest, that would mature 20 years later. The taxpayer asserted that his offer would be deemed accepted unless the city satisfied certain requirements to "terminate its power of acceptance." The city explicitly rejected the offer by letter and, at the close of the statutory redemption period, filed for a tax deed in superior court. The taxpayer intervened, arguing that he had

redeemed the property, but the superior court ruled there was no contract between him and the city. The taxpayer appeals; finding no error, we affirm.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

James Henry Bingman, Sr., the owner of 14 parcels of real property in the City of Dillingham, did not pay property taxes on the parcels from 2006 to 2011. He eventually paid the 2006-2007 taxes, but the City petitioned for foreclosure of his property because of the taxes still outstanding.

The superior court entered a judgment and decree of foreclosure in June 2014, conveying Bingman's property to the City subject to a statutory one-year right of redemption.[1] Four days later the City received from Bingman a "Security Agreement" and a "Promissory Note." In the security agreement, Bingman accepted liability for the 2008-2011 taxes and penalties. The promissory note, which would mature in 20 years, stated that Bingman "promise[s] to pay to the order of the City of Dillingham . . . $88,250.49," the present value of the delinquency (but without future interest). The agreement provided that once the note was delivered to and accepted by the City, its tax judgment would be deemed satisfied and, in exchange, the City would be entitled to enforce the note against Bingman. In essence, Bingman offered to satisfy the tax judgment against him with his own promise that he would pay the taxes in 20 years.

The security agreement required the City, in order to effectively reject Bingman's offer, to (1) return the agreement and all attachments; (2) deliver a corrected statement of account; (3) deliver notification of refusal of tender and provide legal

---

[1]   AS 29.45.400 (providing that a party with an interest in foreclosed property may redeem the property within one year); Dillingham Municipal Code (DMC) 4.15.270 (2016) (providing a one-year redemption period for an interested party).

citations explaining why the tender was defective; and (4) deliver a signed notification of rejection with legal citations and an affidavit explaining why the agreement was unreasonable, in a form admissible in court. The City was given 14 days to reject the agreement; silence or an inadequate rejection would constitute acceptance. And any correspondence mailed to an address other than Bingman's California "Service Address" would not be considered "received" by Bingman.

On June 16, 2014, the City mailed a letter in which it rejected all of Bingman's "terms, offers, proposals, and requests"; the letter was sent to Bingman's Dillingham address instead of the California address he had designated for service. The City did not return the promissory note or any other of Bingman's documents. Bingman asserts that by June 28 — after his 14-day deadline — he had not received the City's letter. Over the year that followed he did not make any other attempts to redeem the property.

### B. Proceedings

On July 20, 2015, after publishing notice that the redemption period was expiring, the City asked the superior court to issue a tax deed for 13 of Bingman's properties.[2] The court allowed Bingman to intervene as a party of interest "for the limited purpose of litigating whether he exercised his right of redemption." In support of a motion to compel the City to acknowledge his satisfaction of the underlying judgment of foreclosure, Bingman argued that he had redeemed the property because the City accepted his offer through silence, kept the promissory note as "tender," and failed to satisfy his requirements for a proper rejection. The superior court denied Bingman's motion and concluded that he had not redeemed the property, noting that he had tried the

---

[2] One of Bingman's 14 foreclosed properties had been redeemed by someone else.

same strategy unsuccessfully in an earlier tax case.[3]  The court held that no contract existed because there was no meeting of the minds and that in any event Bingman's proposed contract would have been unenforceable under the statute of frauds.  Bingman moved for reconsideration, which the superior court denied.  Bingman appeals.

## III.    STANDARDS OF REVIEW

We review "questions of contract formation and interpretation de novo" in the absence of factual disputes.[4]  Factual findings relevant to contract formation are reviewed for clear error.[5]  "Findings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.' "[6]

A trial court's denial of a motion to compel acknowledgment of the satisfaction of a judgment is reviewed for abuse of discretion.[7]

---

[3]    *See Bingman v. City of Dillingham (Bingman I)*, No. S-15706, 2015 WL 8521289 (Alaska Dec. 9, 2015).

[4]    *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011,1014 (Alaska 2011) (citing *Copper River Sch. Dist. v. Traw*, 9 P.3d 280, 283 (Alaska 2000)).

[5]    *Id.* at 1014 n.2 (citing *Munn v. Thornton*, 956 P.2d 1213, 1217-18 (Alaska 2000)).

[6]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

[7]    *See* AS 09.30.300(a) ("[U]pon motion, the court may compel an acknowledgment of satisfaction or may order the entry of satisfaction to be made without it."); *cf. Flores v. Huppenthal*, 789 F.3d 994, 1000-01 (9th Cir. 2015) (noting that an abuse of discretion standard applies to a federal district court's decision whether "to relieve a party from final judgment if 'the judgment has been satisfied, released, or discharged' " (quoting Fed. R. Civ. P. 60(b)(5))).

## IV.    DISCUSSION

### The City Did Not Accept Bingman's Offer.

Bingman argues that he formed a contract with the City because the City "did not terminate its power to accept . . . in accordance with the terms of the offer," manifested assent by accepting and retaining the promissory note as "tender," and intended its silence to operate as acceptance.  These arguments have no support in either the law or the facts.

Until an offeree unequivocally accepts the offeror's terms, there is no contract.[8]  The mere fact that the offeree has not "terminate[d] its power to accept" the offer is not, without more, evidence that it has accepted.  And in this case the evidence shows the opposite:  that the City explicitly rejected Bingman's offer.  The City's June 16, 2014 letter to Bingman stated that "[a]ll the terms, offers, proposals, and requests contained in your correspondence are rejected.  The City does not agree to grant any kind of security interest to you for any reason, nor does it accept your apparent proposal to enter into a promissory note."

Bingman argues that the City actually accepted his offer because it did not return the promissory note to him along with its rejection letter.  But a debt is not automatically discharged or suspended simply because the debtor mails the creditor a promissory note and the creditor keeps it.  Alaska Statute 45.03.310(b) provides that "if a note . . . is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the

---

[8]    *See Municipality of Anchorage v. Stenseth*, 361 P.3d 898, 906 (Alaska 2015) (identifying "an unequivocal acceptance of the terms [of the offer] by the offeree" as one of the requirements for the formation of an express contract (quoting *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989))).

instrument were taken." But " '[t]aking' the instrument . . . requires more than simply its delivery by the obligor to the obligee. The obligee must perform some act of accepting the instrument in either conditional or absolute payment of the obligation."[9] An obligee who returns the instrument clearly has not taken it; one who negotiates or deposits the instrument clearly has.[10] But if an "obligee retains the instrument but does not negotiate or deposit it," then "his intent to accept the instrument in payment determines whether he takes the instrument for the underlying obligation."[11] In such a case, "[t]he court should examine what objectively appears to be the obligee's intent as evidenced by his actions."[12]

The City's actions clearly indicate that it did not intend its retention of the note to operate as an acceptance of Bingman's proposal. Its rejection letter could leave no doubt in a reasonable mind; and even if Bingman did not receive the City's letter because it was not mailed to his stipulated service address, as he contends, the letter is still objective evidence of the City's contemporaneous intent. The City confirmed this intent by its later, wholly consistent conduct. If a property is redeemed, the City is required by statute to "record the redemption and issue a certificate containing a property description, the redemption amount, and the dates of judgment and decree of

---

[9] 6 WILLIAM D. HAWKLAND & LARY LAWRENCE, HAWKLAND'S UNIFORM COMMERCIAL CODE SERIES § 3-310:1 (Frederick H. Miller ed., rev. ed. 2016); *see also* 6B DAVID FRISCH, LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-310:6 (3d rev. ed. 2016) ("[T]he obligee's receipt by mail of an instrument does not constitute her taking of the instrument for the underlying obligation.").

[10] HAWKLAND & LAWRENCE, *supra* note 9.

[11] *Id.*

[12] *Id.*

foreclosure."[13] But the City never recorded Bingman's "redemption," nor did it issue a certificate indicating that he had redeemed the property. Instead, beginning June 11, 2015, the City published a "Notice of the Expiration of Redemption Period" for four consecutive weeks and sent copies of the notice to all lienholders of record.[14] On July 20 the City moved for the properties to be transferred by tax deed because they had not been redeemed. It requested a tax deed for only 13 of the 14 properties it had foreclosed upon because a different person redeemed one of the lots (even though, according to Bingman, he had already redeemed that lot himself by his security agreement).

Bingman also argues that it was the City's responsibility to make sure he knew about its rejection, because he had informed the City he would interpret its silence as acceptance. The Restatement (Second) of Contracts notes that "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting," and "the offeror who has invited such an acceptance cannot complain of the resulting uncertainty in his position."[15] As the plaintiff, Bingman bore the burden to prove "unequivocal acceptance by the [City] and an intent to be bound" by the terms of the purported contract.[16] The evidence supports

---

[13]    AS 29.45.410; DMC 4.15.280.

[14]    *See* AS 29.45.440(a) (providing for notice and preparations before the expiration of the redemption period); DMC 4.15.310(A).

[15]    RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. c (AM. LAW. INST. 1981).

[16]    *Magill v. Nelbro Packing Co.*, 43 P.3d 140, 142 (Alaska 2001) (quoting *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997)).

only the conclusions that the City did not remain silent at all and that, through its letter to Bingman and its subsequent conduct, it fully intended to reject Bingman's proposal.[17]

## V.    CONCLUSION

We AFFIRM the superior court's judgment.[18]

---

[17]    We necessarily reject Bingman's argument that he repurchased the property pursuant to AS 29.45.470, which allows a taxpayer to repurchase foreclosed property that remains in municipal ownership.  His June 2014 offer was made well before the repurchase period, which began when the deeds transferred the property to the City in July 2015.  And his offer failed to meet any of the provisions of the statute for calculating the purchase price.  *See* AS 29.45.470(a)(1)-(4).

Bingman also argues briefly that he has been deprived of due process and equal protection because the superior court failed to "exercise due care."  But Bingman has not demonstrated that the superior court committed any error, let alone any that rises to the level of a constitutional violation.

Finally, because of our decision that there was no contract, we find it unnecessary to reach the statute of frauds, the superior court's alternative ground for denying Bingman's motion.

[18]    In light of the frivolousness of Bingman's arguments, we will entertain a motion by the City for its full reasonable attorney's fees incurred on appeal.  *See* Alaska R. App. P. 508(e)(2)-(3).