Harsha, J.
*691 {¶ 1} David Dunlap II appeals from the summary judgment in favor of National Collegiate Student Loan Trust 2005-3 ("NCSLT") on a student loan he co-signed and in favor of NCSLT on his counterclaims against NCSLT. Dunlap asserts that the trial court erred in granting summary judgment and not dismissing the case because NCSLT lacked standing to collect on the debt.
{¶ 2} However, NCSLT submitted an affidavit of an employee of the subservicer of the loan, with attached documentation, showing that the original lender transferred the loan to another entity, which in turn transferred it to NCSLT before the loan was in default. This evidence also established that there had been no payment on the loan since March 2011, it was in default, and that absent a viable defense, Dunlap owed the principal sum of $28,603.21, plus accrued interest of $5,830.37 as of March 2017. The employee of the subservicer was competent and the documentation attached to his affidavit was admissible as business records. Although NCSLT's amended complaint erroneously referred to an incorrect date for the loan, the error was corrected by its motion to amend its amended complaint to include the correct date.
{¶ 3} Moreover, Dunlap's defense that he paid the obligation was meritless. The $30,000 promissory note he executed and mailed to the entity that demanded payment of the loan did not suspend his obligation under R.C. 1303.39(B) because there was no evidence that NCSLT had "taken" the note for the underlying loan obligation. Based on these circumstances, the trial court did not err in granting summary judgment in favor of NCSLT on its claim.
{¶ 4} In addition, the trial court properly granted summary judgment in favor of NCSLT on Dunlap's counterclaims asserting that NCSLT was required to have a license to transact business in Ohio and was subject to the Fair Debt Collection Practices Act ("FCDPA"), 15 U.S.C. 1692 et seq. Dunlap did not contest this part of the summary judgment in his initial brief and we need not consider the attempt in his reply brief to argue that his counterclaims had merit.
{¶ 5} Next Dunlap contends that the trial court erred by failing to issue findings of fact and conclusions of law on its judgment granting for summary judgment to NCSLT. We reject his contention because findings of fact and conclusions of law are unnecessary for rulings on motions for summary judgment.
{¶ 6} Dunlap also claims that the trial court's entry of summary judgment for NCSLT violated his right to a jury trial. We reject Dunlap's claim because the proper entry of summary judgment does not violate an individual's right to a jury trial.
{¶ 7} Next Dunlap argues that the trial court judge erred by denying the motion to recuse himself because of his personal bias or prejudice against Dunlap. But we lack jurisdiction to consider the trial court judge's failure to recuse himself when Dunlap could have-and did-file a timely affidavit of disqualification with the Chief Justice of the Supreme Court to resolve his claims.
{¶ 8} Finally, Dunlap asserts that the trial court committed reversible error by ruling on various motions before he had the opportunity to respond, rendering the court's subsequent entry of summary judgment void. We agree it appears that under the civil rules of procedure and the local rules of the trial court, the trial court ruled *692 on certain motions before Dunlap had the opportunity to respond. But because he was given the opportunity to respond to NCSLT's motion for summary judgment, the trial court's judgment was not void or violative of his right to due process. He has not established that the trial court's error prejudiced his right to defend against summary judgment.
{¶ 9} Therefore, we find no error by the trial court in granting NCSLT's motion for summary judgment on its claim and Dunlap's counterclaims. We overrule Dunlap's assignments of error and affirm the court's judgment.
I. FACTS
{¶ 10} In an amended complaint NCSLT sought to recover the amount due on a July 2005 defaulted college loan that Dunlap co-signed. After Dunlap filed an answer and counterclaims, he filed motions for summary judgment and to dismiss NCSLT's complaint, claiming that NCSLT lacked standing to collect on the loan because it had not established a proper assignment from the original lender, but the trial court denied the motions.
{¶ 11} Dunlap also filed an emergency motion asking the trial judge to recuse himself based on bias and prejudice. After the judge denied the motion, Dunlap filed an affidavit of disqualification in the Supreme Court of Ohio, raising the same claims of bias and prejudice. The Chief Justice declined to disqualify the trial judge.
{¶ 12} NCSLT filed a motion for summary judgment, supported by an affidavit of an employee of the subservicer of the student loan, which is the designated custodian of records for the loan. NCSLT also included documentation attempting to establish NCSLT's standing to collect on the loan, the loan default, and the amount due on the loan. Dunlap filed a response supported by his affidavit and documentation purporting to establish that he had paid off the loan by tendering a $30,000 promissory note to the entity that had sent him demand letters for payment. The trial court granted NCSLT's motion for summary judgment and awarded it $34,433.58 plus interest against Dunlap; it also entered summary judgment in NCSLT's favor on Dunlap's counterclaims. Other facts will appear under the assignments of error.
II. ASSIGNMENTS OF ERROR
{¶ 13} Dunlap assigns the following errors for our review:
1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DAVID DUNLAP II ("DUNLAP") IN RULING ON APPELLEE, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3 ("NCSLT") MOTION FOR LEAVE TO RESPOND TO COUNTERCLAIM AND DISCOVERY BY MAY 20, 2016, DUNLAP'S MOTION TO DISMISS AMENDED COMPLAINT, AND NCSLT'S MOTION TO AMEND BY INTERLINEATION, BECAUSE THE COURT RULED ON THESE MOTIONS WITHOUT AFFORDING DUNLAP THE OPPORTUNITY TO BE HEARD VIOLATING DUNLAP'S DUE PROCESS RIGHT TO BE HEARD, CONTRARY TO THE PROTECTIONS OF THE U.S. CONSTITUTION, OHIO CONSTITUTION, JUD. COND., AND THE OATH OF OFFICE OF JUDGE MICHAEL ATER.
2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP IN GRANTING
*693 SUMMARY JUDGMENT TO NCSLT, BECAUSE NO EVIDENCE EXISTS TO ESTABLISH NCSLT AS A PARTY TO THE ALLEGED NOTE OF THE SECOND AMENDED COMPLAINT AND HAVING AUTHORITY TO BRING THIS CASE BEFORE THE TRIAL COURT AND LACKING STANDING, CONTRARY TO CIV.R. 10, CIV.R. 56 AND EVID.R. 401, EVID.R. 402.
3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP BY NOT RULING ON AND GRANTING DUNLAP'S SUMMARY JUDGMENT BY FAILING [TO] NOTICE THE ABSENCE OF THE NOTE OF THE AMENDED COMPLAINT AND FAILING TO NOTICE NCSLT RESPONDED OUT OF TIME TO DUNLAP'S SUMMARY JUDGMENT MOTION AND NOT RULING ON AND GRANTING DUNLAP'S FIRST MOTION TO DISMISS BY FAILING TO NOTICE THE ABSENCE OF DOCUMENTATION SHOWING NCSLT OBTAINED AN INTEREST IN THE NOTE OF THE COMPLAINT AND FAILING TO NOTICE NCSLT RESPONDED OUT OF TIME TO DUNLAP'S FIRST MOTION TO DISMISS WITHIN THE TIME ALLOWED, CONTRARY TO CIV.R. 10, CIV.R. 56 AND EVID.R. 401, EVID.R. 402, LOCAL R. 11.01.
4. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDCIE [sic] OF APPELLANT, DUNLAP IN DENYING DUNLAP'S AMENDED MOTION FOR SUMMARY JUDGMENT ON NCSLT'S SECOND AMENDED COMPLAINT BY FAILING TO NOTICE THE ABSENCE OF DOCUMENTATION SHOWING NCSLT OBTAINED AN INTEREST IN THE NOTE OF THE SECOND AMENDED COMPLAINT, CONTRARY TO CIV.R. 10, CIV.R. 56 AND EVID.R. 401, EVID.R. 402, EVID.R. 902.
5. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP IN DENYING DUNLAP'S MOTION TO DISMISS AMENDED COMPLAINT BY FAILING TO NOTICE THE ABSENCE OF DOCUMENTATION SHOWING THE NOTE EXECUTED ON AUGUST 20, 2007, CONTRARY TO CIV.R. 10, C[IV.R.] 56 AND EVID.R. 401, EVID.R. 402, EVID.R. 902.
6. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP IN NOT RULING ON DUNLAP'S SECOND MOTION TO DISMISS NCSLT'S SECOND AMENDED BY FAILING TO NOTICE THE ABSENCE OF DOCUMENTATION SHOWING NCSLT HAD OBTAINED AN INTEREST IN THE NOTE OF THE SECOND AMENDED COMPLAINT AND FAILING TO NOTICE NCSLT RESPONDED OUT OF TIME TO DUNLAP'S SECOND MOTION TO DISMISS NCSLT'S AMENDED COMPLAINT WITHIN THE TIME ALLOWED, CONTRARY TO CIV.R. 10, CIV.R. 56 AND EVID.R. 401, EVID.R. 402, EVID.R. 902, LOCAL R. 11.01.
*694 7. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP BY FAILING TO APPLY CIV.R., LOCAL R. AND JUDICIAL CODES OF CONDUCT TO BE FOLLOWED IN THE TRIAL COURT AND ORDERS OF THE TRIAL COURT TO BE FOLLOWED BY THE APPELLEE.
8. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP BY FAILING TO RECUSE JUDGE ATER UPON DUNLAP'S EMERGENCY MOTION TO RECUSE JUDGE ATER, CONTRARY TO JUD. COND.
9. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP BY FAILING TO CITE FINDINGS AND CONCLUSIONS CONTRARY TO CIV.R. 52.
10. THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF APPELLANT, DUNLAP BY GRANTING NCSLT'S SUMMARY JUDGMENT MOTION AND THUS NOT ALLOWING DUNLAP HIS RIGHT OF TRIAL BY JURY, IN VIOLATION OF THE OHIO CONSTITUTION.
III. LAW AND ANALYSIS
A. Summary Judgment and Dismissal
1. Summary Judgment Standard of Review
{¶ 14} In his second, third, fourth, fifth, and sixth assignments of error Dunlap asserts that the trial court erred by granting NCSLT's motion for summary judgment, denying his motions for summary judgment, and denying his motions to dismiss based on lack of standing.
{¶ 15} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. Vacha v. N. Ridgeville , 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56 ; New Destiny Treatment Ctr., Inc. v. Wheeler , 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24 ; Chase Home Finance, LLC v. Dunlap , 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, 2014 WL 3940314, ¶ 26.
{¶ 16} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996) ; Chase Home Finance at ¶ 27. Once the moving party meets this initial burden, the nonmoving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial. Dresher at 293, 662 N.E.2d 264.
2. Motion to Dismiss Standard of Review
{¶ 17} A motion to dismiss based on lack of standing to bring an action before the court presents a question of law, which we review de novo. See Bank of America v. Stevens, 4th Dist. Hocking No. 16CA24, 2017-Ohio-9040, 2017 WL 6398844, ¶ 23, citing *695 Moore v. Middletown , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20.
3. Standing
{¶ 18} Dunlap's motion to dismiss claimed that NCSLT failed to establish that it had the requisite standing to seek damages against him on the student loan; NCSLT argued to the contrary.
{¶ 19} Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right; it is necessary to invoke the common pleas court's jurisdiction over the case. See Albanese v. Batman , 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 24. To have standing the party bringing the action must assert a personal stake in the outcome of the action by showing an injury fairly traceable to the defendant's conduct, and that is likely to be redressed by the requested relief. Id. , citing Bank of Am., N.A. v. Kuchta , 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23, and Moore at ¶ 22.
{¶ 20} To establish standing NCSLT submitted the affidavit of an employee of its subservicer for the student loan, who stated under oath that: (1) Dunlap opened an educational loan with the original lender and funds were disbursed in August 2005; (2) the lender transferred, sold, and assigned the loan to National Collegiate Funding, L.L.C. ("National Collegiate Funding"), which in turn transferred, sold, and assigned the loan to NCSLT in October 2005; (3) the loan was in good standing and not in default on the date it was transferred to NCSLT; (4) no payment on the loan was made since March 2011; and (4) Dunlap owed the principal sum of $28,603.21 and accrued interest of $5,830.37, for a total sum of $34,433.58 as of March 2017.
{¶ 21} Attached to and incorporated into the employee's affidavit were copies of other records, including: (1) a letter by the U.S. Bank National Association, in its capacity as the special servicer for various student loan trusts, including NCSLT, confirming that Transworld Systems, Inc. is its subservicer for NCSLT and is the dedicated records custodian for all student loans owned by the trust; (2) the non-negotiable credit agreement representing the $20,000 undergraduate college loan borrowed from the lender, Charter One Bank, N.A. ("Charter One"), by Jacob Dunlap and co-signed by David Dunlap with David Dunlap agreeing to be jointly liable for the loan; (3) the pool supplement agreement between Charter One and First Marblehead Corporation whereby Charter One agreed to transfer to National Collegiate Funding each student loan set forth in Schedule 2 with the agreement that National Collegiate Funding will sell the transferred loans to NCSLT; (4) Schedule 1 of the pool supplement, which references various note purchase agreements; (5) Schedule 2 of the pool supplement, which references the Charter One loan to the Dunlaps; (6) the October 2005 deposit and sale agreement in which National Collegiate Funding agreed to sell the student loans listed in Schedule 2 of the pool supplement, which includes the Charter One loan to the Dunlaps, to NCSLT; and (7) copies relating to the financial activity and payment history of the Dunlaps' college loan.
{¶ 22} Citing NTL Collegiate Stndt Loan Trust 2005-1 v. Owusu , 12th Dist. Butler No. CA2015-07-139, 2016-Ohio-259, 2016 WL 363550, Dunlap argues that NCSLT's documentation was insufficient to establish its standing to sue him. In Owusu the trial court granted summary judgment in favor of NCSLT on a student loan that originated from Charter One, and allegedly was sold to NCSLT. The trial court determined that the loan balance *696 had been accelerated in accordance with the terms of the loan and that NCSLT had standing to collect on it, but the court of appeals reversed, finding at ¶ 10-12 (footnote omitted), that the necessary documentation was missing:
{¶ 10} After reviewing the record, we find that the trial court improperly granted summary judgment, as there remain genuine issues of material fact. The record is clear that NCSLT neglected to include documentation to prove that it is entitled to demand judgment on the note. Although the record contains reference to the pool agreement and an uncontested affidavit that Owusu is in default, NCSLT did not include specific documentation to directly link the pool of debts assigned to NCSLT from Charter One to the debt Owusu's incurred and had defaulted upon.
{¶ 11} Nor does the record contain any indication as to the terms or conditions of the loan or consequences of default, most notably an acceleration clause. Despite the trial court's finding that the documentation included with NCSLT's complaint included specific reference to acceleration, no such document or reference is included in the record either by way of the loan agreement or affidavit from the custodian of NCSLT's records.
{¶ 12} The documentation of the direct link showing that Owusu's debt was included in the pool of debts assigned to NCSLT as well as the terms and conditions of the loan and default were not in the record before the trial court, and therefore could not provide any basis for the trial court's grant of summary judgment. We therefore find that the trial court's grant of summary judgment was improper given these missing pieces of evidence from the record. Our decision, however, should not be taken as any indication of the ultimate merits of this case given that NCSLT may supplement the trial court record upon remand.
{¶ 23} Conversely, here, the documentation attached to the subservicer employee's affidavit included the specific reference to the Dunlaps' college loan with Charter One in Schedule 2 of the pool agreement, as well as the explicit reference that the loan was being transferred by Charter One to National Collegiate Funding and from National Collegiate Funding to NCSLT. In addition, unlike NTL Collegiate Stndt Loan Trust 2005-1 , the documentation submitted by NCSLT here included the terms and conditions of the loan and the consequences of default. Therefore, NTL Collegiate Stndt Loan Trust 2005-1 is inapposite.
{¶ 24} We also find Dunlap's challenge to the propriety of NCSLT's affidavit is meritless. The employee stated under oath that his company, Transworld Systems, Inc., had been contracted to perform the duties of the subservicer for NCSLT by U.S. Bank, National Association, the special servicer for NCSLT; and an attached letter from the U.S. Bank National Association Vice-President confirmed that status. The employee further stated under oath that Transworld Systems is the designated records custodian for Dunlap's educational loan, and documents relating to the loan, its transfer to NCSLT, its payment history, and the amount due on it; and these documents are kept in the regular course of business. These documents were properly admissible. See HSBC Bank USA, Natl. Assn. for Citigroup Mtge. , 2017-Ohio-9285, 102 N.E.3d 1080, ¶ 10 (10th Dist.) ("records custodians can present business records kept in the regular course of business if they have personal knowledge of the company's records because such records are excepted from exclusion as hearsay and may be authenticated by the records custodian");
*697 State ex rel. Corrigan v. Seminatore , 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981) ( Civ.R. 56(E) requirement that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit" is satisfied by attaching copies of papers "coupled with a statement therein that such copies are true copies and reproductions").
{¶ 25} Consequently, the summary judgment evidence established that: NCSLT owned the loan through transfers from Charter One to National Collegiate Funding and from National Collegiate Funding to NCSLT; the Dunlaps defaulted on it by failing to make timely payments; and that absent the propriety of a defense, Dunlap owed the principal sum of $28,603.21 and accrued interest of $5,830.37, for a total sum of $34,433.58 as of March 2017. Absent summary judgment evidence of a valid defense, summary judgment in favor of NCSLT would be proper.
{¶ 26} Although NCSLT's amended complaint erroneously referred to an incorrect date for the loan, the error was manifestly inadvertent because the attached loan record indicated the correct date. And NCSLT's motion to amend remedied any error upon the trial court's approval of the amendment.
{¶ 27} Moreover, the denial of Dunlap's motions to dismiss and for summary judgment was appropriate insofar as he raised these same standing claims. Although a plaintiff must have standing at the time suit is commenced, proof of standing may be submitted subsequent to the filing of the complaint. See, e.g., Wells Fargo Bank, N.A. v. Horn , 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 1 (applying this rule to foreclosure actions). Similarly, insofar as Dunlap argues that NCSLT violated Civ.R. 10(D)(1) by failing to attach all the pertinent documents to support its standing, "failing to attach documents to a complaint pursuant to Civ.R. 10(D)(1) does not equate to a lack of standing." Id. at ¶ 16. NCSLT ultimately established its requisite standing to sue Dunlap on the defaulted loan when it submitted its summary judgment evidence.
4. Defenses and Counterclaims
{¶ 28} Finally, we consider the propriety of Dunlap's defenses and counterclaims based on the summary judgment evidence.
{¶ 29} Dunlap first claimed that he was not liable to NCSLT for the defaulted college loan because he had not signed the loan that it was attempting to collect. Dunlap's affidavit claiming he did not sign the college loan attached to NCSLT's amended complaint and his other uncorroborated and self-serving statements did not raise a genuine issue of material fact precluding summary judgment in favor of NCSLT. See Bank of New York Mellon v. Bobo , 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13 (4th Dist.) ("A self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of a material fact"). To conclude otherwise would enable a nonmoving party to avoid summary judgment in every case, crippling the beneficial use of Civ.R. 56 to dismiss meritless claims and narrow issues for trial. Id. , citing Wells Fargo Bank v. Blough , 4th Dist. Washington No. 08C49, 2009-Ohio-3672, 2009 WL 2220065, ¶ 18.
{¶ 30} Dunlap also cites evidence of a different loan he entered into with Charter One as evidence that he did not co-sign the loan transferred to NCSLT. But the mere fact that he might have co-signed other college loans that were not transferred to NCSLT did not raise a genuine issue of material fact about the one he did sign and that NCSLT held.
{¶ 31} Next Dunlap contends that he was not liable to NCSLT because he paid *698 off the loan by presenting NCSLT with a $30,000 promissory note that suspended his payment under R.C. 1303.39(B). In his response to NCSLT's motion for summary judgment, Dunlap included an affidavit stating he had received letters demanding payment from an entity named National Collegiate Trust and that he mailed it a promissory note, which was delivered in January 2011, in the amount of $30,000 to pay the amount due under the college loan. Dunlap supported his claim that he made payment of the obligation with the promissory note by an affidavit to which he attached a letter to National Collegiate Trust and a promissory note in the amount of $30,000, as well as a certified mail receipt noting its delivery. This note and letter required the presentation of the note to Dunlap at his address for payment.
{¶ 32} R.C. 1303.39(B) provides that "if a note * * * is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and * * * (2) In the case of a note, suspension of the obligation continues until dishonor of the note or until it is paid."
{¶ 33} NCSLT argues on appeal, as it did in the trial court, that R.C. 1303.39 does not apply to Dunlap's promissory note because it is not a negotiable instrument under R.C. 1303.03(D). NCSLT cites the language from R.C. 1303.03(D) that "a promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this chapter"; NCSLT argues that because the loan agreement it is attempting to collect expressly stated that it was a "non-negotiable credit agreement," it was not subject to R.C. 1303.39(B).
{¶ 34} But NCSLT's argument lacks merit. The loan agreement is the obligation and not the note attempting to pay the obligation; it is Dunlap's note, which promises to pay the obligation created by the loan, that must be negotiable under R.C. 1303.03(D) in order to suspend the obligation under R.C. 1303.39(B). See 2 White, Summers, & Hillman, Uniform Commercial Code, Section 17:41 (6th Ed.2017), construing the similar UCC 3-380 ("The 'underlying obligation' is the original obligation between the parties which led to the issuance of the negotiable instrument in the first place"). Dunlap's promissory note states on its face that it is a "NEGOTIABLE INSTRUMENT."
{¶ 35} Nevertheless, the promissory note must be "taken" for the loan in order for R.C. 1303.39(B)(2) to suspend the obligation. The Hawkland UCC treatise explains the "taken" requirement in UCC Section 3-310(b) for a promissory note or uncertified check to suspend an obligation:
Regardless of the type of instrument, a condition to the application of Section 3-310 is that the instrument must be "taken" for the underlying obligation. "Taking" the instrument for the underlying obligation requires more than simply its delivery by the obligor to the obligee. The obligee must perform some act of accepting the instrument in either conditional or absolute payment of the obligation. Whether the obligee has accepted the instrument in payment of the obligation is often a difficult question of fact. Unless previously authorized by the obligee as an acceptable form of payment, the obligee's receipt by mail of an instrument does not constitute his taking of the instrument for the underlying obligation. If he promptly returns the instrument, *699 he is not be deemed to have taken the instrument for the obligation. However, if he deposits or negotiates the instrument, he will be deemed to have taken it for the obligation.
Borderline situations arise where the obligee retains the instrument but does not negotiate or deposit it. In these situations, his intent to accept the instrument in payment determines whether he takes the instrument for the underlying obligation. Subjective intent is irrelevant. The court should examine what objectively appears to be the obligee's intent as evidenced by his actions. Where the obligee is an organization, questions will arise as to the actual or apparent authority of a particular agent to accept an instrument in payment of the obligation.
5 Hawkland UCC Series , Section 3-310:1 (Rev.Ed.2017) (Emphasis added and footnotes omitted.)
{¶ 36} Here, there is evidence that NCSLT's servicing agent signed for the certified mail containing Dunlap's promissory note. But there is no summary judgment evidence that the servicer was either authorized by NCSLT to accept Dunlap's instrument as payment of the loan or that the servicer actually accepted it as payment. This appears to be the "[b]orderline situation" where the servicer evidently retained the promissory note but neither it nor NCSLT negotiated or deposited it-there are simply no actions in the summary judgment evidence that would support a finding that Dunlap's note was taken so as to suspend his obligation under the loan.
{¶ 37} It is true that Dunlap submitted an affidavit in the summary judgment materials claiming that NCSLT "received and accepted payment in full for the [original] Note." Although he also attached a certified mail receipt indicating that NCSLT's agent received the envelope containing the promissory note, he did not include any support for his self-serving statement that NCSLT "accepted" the promissory note as "payment in full" for the college loan obligation. It is axiomatic that "[a] self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact." U.S. Bank Natl. Assn. v. Bobo , 4th Dist. Athens No. 14CA35, 2014-Ohio-4975, 2014 WL 5800399, ¶ 16. And as already noted the mere receipt of the note is insufficient to establish that it was "taken" so as to suspend the obligation under Ohio's enactment of UCC Section 3-310(b) - R.C. 1303.39(B).
{¶ 38} Significantly, there is no evidence that after the receipt of the promissory note by its agent, NCSLT ceased sending invoices requesting payments on the loan, or that it mailed any documentation to Dunlap indicating that the loan obligation was suspended or discharged. Instead, by filing this action and seeking to collect on the obligation, NCSLT acted inconsistently with accepting the promissory note tendered by Dunlap. See, e.g., Bingman v. Dillingham , 376 P.3d 1245, 1248 (Alaska 2016) ("The City's actions clearly indicate that it did not intend its retention of the note to operate as an acceptance of Bingman's proposal").
{¶ 39} As the Alaska Supreme Court held in Bingman at 1248, citing Hawkland UCC Series , " '[t]aking the instrument ... requires more than simply its delivery by the obligor to the obligee. The obligee must perform some act of accepting the instrument in either conditional or absolute payment of the obligation[,] [t]he court should examine what objectively appears to be the obligee's intent as evidenced by his actions.' ".
*700 {¶ 40} And in this context the obligor "bore the burden to prove 'unequivocal acceptance by the [obligee] and an intent to be bound' by the terms of the purported contract." Id. Thus Dunlap failed to raise a genuine issue of material fact that he could meet this burden here.
{¶ 41} Therefore, Dunlap's claim that his obligation under the college loan was suspended by R.C. 1303.39(B) is meritless and cannot withstand summary judgment.
{¶ 42} Dunlap does not argue in his initial merit brief that the trial court erred in rejecting his counterclaims. Therefore, he cannot meet his burden of establishing that the trial court erred in granting summary judgment in favor of NCSLT on his counterclaims concerning the licensing requirement of R.C. 1703.03 and whether NCSLT was a debt collector subject to the FCDPA.
{¶ 43} Although Dunlap did claim that the court erred in granting summary judgment on the latter counterclaim in his reply brief, we need not consider it. See State v. Ross , 2017-Ohio-9400, 103 N.E.3d 81, ¶ 17 (4th Dist.) ; State v. Spaulding , 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 179, quoting State v. Quarterman , 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 18. (" 'Appellate courts generally will not consider a new issue presented for the first time in a reply brief' "). And even if this counterclaim were before us, it would fail: NCSLT is a creditor and not a debt collector subject to the FDCPA-it was not collecting a debt that was already due where the evidence established that it acquired the college loan before the borrowers defaulted.
{¶ 44} The trial court correctly granted summary judgment in favor of NCSLT on its claim to collect on the college loan obligation, and it correctly entered summary judgment in NCSLT's favor on Dunlap's counterclaims. Accordingly, we override Dunlap's second assignment of error. The trial court also properly denied Dunlap's motions to dismiss and for summary judgment, which were based on his meritless contention that NCSLT lacked standing to sue on the college loan because of a lack of the requisite documentation. We overrule Dunlap's third, fourth, fifth, and sixth assignments of error.
B. Findings of Fact and Conclusions of Law
{¶ 45} In his ninth assignment of error Dunlap contends that the trial court failed to issue findings of fact and conclusions of law to support its grant of summary judgment in favor of NCSLT even though he timely requested them in writing under Civ.R. 52.
{¶ 46} We reject his contention because under Civ.R. 52, findings of fact and conclusions of law are unnecessary for rulings on motions for summary judgment. See State ex rel. Sharif v. Cuyahoga Cty. Court of Common Pleas , 85 Ohio St.3d 375, 376-377, 708 N.E.2d 718 (1999) ("the common pleas court has no duty to issue findings of fact and conclusions of law on Sharif's motions [for summary judgment and for dismissal of charges], which did not require the trial of questions of fact"); Robson v. Quentin E. Cadd Agency , 179 Ohio App.3d 298, 2008-Ohio-5909, 901 N.E.2d 835, ¶ 13 (4th Dist.) ; Civ.R. 52 ("Findings of fact and conclusions of law required by this rule * * * are unnecessary upon all other motions including those pursuant to * * * Civ.R. 56"). We overrule Dunlap's ninth assignment of error.
C. Right to Jury Trial
{¶ 47} In his tenth assignment of error Dunlap claims that the trial court denied him his right to a jury trial. Under Article I, Section 5 of the Ohio Constitution, parties *701 have a constitutional right to a jury trial in civil matters.
{¶ 48} But the right to a jury trial is only enforceable where there are factual issues to be tried, and the proper entry of summary judgment does not violate an individual's right to a jury trial. See Conley v. Shearer , 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992), Viars v. Ironton , 4th Dist. Lawrence No. 16CA8, 2016-Ohio-4912, 2016 WL 3670171, ¶ 53, quoting Barstow v. Waller , 4th Dist. Hocking No. 04CA5, 2004-Ohio-5746, 2004 WL 2427396, ¶ 53. Therefore, we overrule his tenth assignment of error because the court properly entered summary judgment in favor of NCSLT.
D. Motion to Recuse Trial Court Judge
{¶ 49} The eighth assignment of error contends that the trial court erred in denying the emergency motion for recusal. In accordance with the general rule, we lack jurisdiction to consider the trial judge's refusal or failure to recuse himself. See Beem v. Thorp , 5th Dist. Licking No. 16-CA-97, 2017-Ohio-2967, 2017 WL 2265524, ¶ 13, citing State v. Gregory , 4th Dist. Gallia No. 16CA3, 2016-Ohio-7940, 2016 WL 6964039, ¶ 5. The proper procedure for recusal of a common pleas court judge based on "a bias or prejudice for or against a party to a proceeding" is provided in R.C. 2701.03, which vests exclusive jurisdiction in the Chief Justice or Chief Justice's designee to hear disqualification matters. Beem at ¶ 13, citing Beer v. Griffith , 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978).
{¶ 50} Moreover, insofar as we may retain jurisdiction to address his claims that the bias/prejudice occurred during the trial, see Gregory at ¶ 12-13 (Harsha, J., concurring), Dunlap's complaints about specific adverse rulings on various motions are meritless because "it is well established that 'a judge's adverse rulings, even erroneous ones, are not evidence of bias or prejudice.' " In re Disqualification of Collier-Williams , 150 Ohio St.3d 1286, 2017-Ohio-5718, 83 N.E.3d 928, ¶ 14, quoting In re Disqualification of Fuerst , 134 Ohio St.3d 1267, 2012-Ohio-6344, 984 N.E.2d 1079, ¶ 14.
{¶ 51} And because Dunlap could have raised his judicial-bias claim in a timely affidavit for disqualification under R.C. 2701.03 to the Chief Justice-and in this case did so-he was foreclosed from raising this issue on appeal. State v. Dean , 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 223. Therefore, we dismiss this part of Dunlap's appeal.
E. Additional Trial Court Rulings
{¶ 52} In his first assignment of error Dunlap asserts that the trial court ruled on NCSLT's motions for leave to respond to his counterclaims and discovery, and to amend its amended complaint by interlineation, before affording him the time to respond under the applicable rules of procedure; and that the court also ruled on his motion to dismiss the amended complaint before he had the opportunity to reply to NCSLT's memorandum in opposition - all of which violated his due process right to be heard. In his seventh assignment of error Dunlap contends that the trial court erred by failing to apply various rules.
{¶ 53} We agree with Dunlap that the trial court ruled on certain motions before giving him the opportunity to respond under Civ.R. 6(C) and Loc.R. 11.01 of the Ross County Common Pleas Court. But we disagree that any error in doing so resulted in automatic, reversible prejudice. His counterclaims and motion to dismiss based on lack of standing were meritless. And the trial court did not abuse its discretion by granting NCSLT's motion to amend its *702 amended complaint to include the correct date of the loan it was attempting to collect on. See, e.g., Klocinski v. American States Co. , 6th Dist. Lucas No. L-03-1353, 2004-Ohio-6657, 2004 WL 2849054, ¶ 31 (premature grant of summary judgment before nonmoving party had an opportunity to respond did not constitute prejudicial error because even if given the opportunity to respond, he would not have prevailed).
{¶ 54} Moreover, the preeminent rulings in this appeal involve NCSLT's motion for summary judgment, for which Dunlap was afforded the appropriate time to respond. The trial court's entry of judgment was not void or violative of his right to due process. He has not established that the trial court's error prejudiced his right to defend against summary judgment. We overrule Dunlap's first and seventh assignments of error.
V. CONCLUSION
{¶ 55} The trial court properly granted summary judgment on NCSLT's claim to collect on the college loan and denied Dunlap's motions for summary judgment and to dismiss. Having overruled Dunlap's first, second, third, fourth, fifth, sixth, seventh, ninth, and tenth assignments are error, we affirm the summary judgment entered in NCSLT's favor on its claim and on Dunlap's motions for summary judgment and his counterclaims. We dismiss the eighth assignment of error that challenges the trial court's denial of Dunlap's motion to recuse the trial judge.
APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED.
Hoover, P.J., & Abele, J.: Concur in Judgment and Opinion.