NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES COLE and DIANE COLE, | ) | |
| | ) | Supreme Court No. S-18593 |
| Appellants, | ) | |
| | ) | Superior Court No. 3KO-21-00131 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) | AND JUDGMENT* |
| | ) | |
| | ) | No. 2025 – April 24, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kodiak, Stephen B. Wallace, Judge.

Appearances: Richard R. Moses, Holmes Weddle & Barcott, P.C., Anchorage, for Appellants. Michelle L. Boutin and Bruce A. Moore, Landye Bennett Blumstein LLP, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

I.    INTRODUCTION

After a mortgage company foreclosed and evicted a couple from their home, the company disposed of the personal property left behind. The couple sued, claiming they had not received proper notice about their property rights. The mortgage company and the couple reached a settlement agreement after mediation. The couple agreed to dismiss their claims in return for $50,000, then refused to sign the agreement,

---

*    Entered under Alaska Appellate Rule 214.

and the mortgage company sued to enforce the settlement agreement. The couple claimed the agreement was not enforceable because they had been fraudulently induced to settle. The superior court found that there was no fraudulent inducement and enforced the settlement agreement. The couple appeals; we affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Following a 2017 non-judicial foreclosure sale, the Federal National Mortgage Association (Fannie Mae) acquired a house that James Cole and Diane Cole had previously purchased. Fannie Mae filed a complaint for eviction to obtain possession of the house. In response, James Cole filed three separate UCC-1 financing statements[1] in April, May, and June 2019, to encumber the property of various professionals representing Fannie Mae.[2]

In May 2019 the court issued a writ of assistance for "any peace officer" to "eject and remove" the Coles from the house. The court ordered that Fannie Mae was "responsible for the return, storage, or disposal of any personal property" left by the Coles in "accordance with the applicable law." On June 18, 2019, Fannie Mae's process server travelled to the house and personally served a copy of the writ on Diane Cole. Fannie Mae claims that it also sent an email to the Coles' attorney on June 18, notifying him "that the lockout of the Property was going to continue based upon the lack of any response to [a] counteroffer to purchase" the property.

Fannie Mae also claims that the next day, June 19, it provided notice to the Coles that they had a right to reclaim their personal property from the house. The notice warned the Coles that if they did not "pay the reasonable cost of storage" or take possession of their belongings "not later than 15 days from the date of this notice, this

---

[1]     "[T]he purpose of filing a financing statement is to give notice to third parties that the filing party may have a security interest in the named debtor's property." *Kazan v. Dough Boys, Inc.*, 201 P.3d 508, 515-16 (Alaska 2009).

[2]     All three filings are active on the UCC Central File system.

property may be disposed of pursuant to [AS] 34.03.260."[3]  The notice stated that property that was not stored or reclaimed "may be sold and the proceeds . . . applied toward the costs of removal and storage."  And it provided that any excess proceeds would be mailed to the Coles.

In September 2019, Fannie Mae arranged for the Coles' belongings to be removed from the home.[4]  On September 16, 2019, Fannie Mae's attorney emailed the Coles' attorney and included a picture of the writ of assistance and a notice of right to reclaim abandoned personal property.  The email stated that the removal of the personal property "should have been of no surprise to Mr. Cole" because the Coles' attorney was notified on June 18, 2019 that the lockout "was going to continue"; the lockout took place on June 18 while "Diane Cole was present"; "[t]he following day a Notice of abandoned personal property was posted"; and "[t]hat notice was given to Diane Cole . . . and provided her with 15 days to remove [remaining] property."  The Coles' attorney forwarded the email to James Cole on the same day, noting, "If this is true, you have no claim for personal property."

## B.    Proceedings

On August 30, 2021, the Coles filed a lawsuit claiming that Fannie Mae "did without cause and without notice . . . remove [the Coles'] Belongings from the Home and dispose[] of them."  The complaint alleged that Fannie Mae breached AS 34.03.260 — Alaska's Uniform Residential Landlord Tenant Act[5] — by failing to

---

[3]     AS 34.03.260 requires at least 15 days' notice before a landlord may remove abandoned property upon termination of a tenancy.

[4]     The superior court stated that Fannie Mae disposed of the belongings in August or September 2018 but the year was a clerical error because the eviction did not occur until 2019.  And the parties agree that the Coles' belongings were disposed of in September.

[5]     The complaint relied on the theory that AS 34.03.260 applied to Fannie Mae.  On appeal, Fannie Mae notes that no landlord-tenant relationship ever existed between the company and the Coles.

demand the Coles remove the property, by failing to store their belongings, and then by failing to sell the property; that Fannie Mae "did wrongfully and without legal cause take the Belongings and convert them"; and that Fannie Mae's actions caused them emotional distress. The Coles sought monetary damages, attorney's fees, and penal damages pursuant to AS 34.03.260(d).[6]

Fannie Mae answered the complaint in February 2022. It raised several affirmative defenses, including that the Coles failed to state a claim upon which relief may be granted; that the claims were barred by the doctrines of estoppel, waiver, and laches; that the Coles "suffered no loss, injury, or damage as the property was valueless or of such little value that the cost of storing and conducting a public sale would probably exceed the amount that would be realized from the sale of the property"; and that the Coles "failed to take proper and reasonable steps to avoid, minimize, or mitigate alleged damages."

In September the Coles, their attorney, and Fannie Mae representatives and its attorney participated in mediation and reached a settlement agreement. At the conclusion of mediation, the agreement was put on the record. It required Fannie Mae to pay the Coles $50,000 for all claims "that were made, could have been made, might have been made, [and] should have been made in connection with [the] foreclosure and disposal of property action." The agreement also required Fannie Mae to pay the costs of the mediation.

In exchange the Coles agreed to terminate their UCC filings and dismiss their lawsuit with prejudice. Each side agreed to bear its own costs and fees. The agreement required all payments to be made "within ten days of receipt of a signed release" from the Coles. The Coles confirmed that they were "making a knowing,

---

[6]     *See* AS 34.03.260(d) (allowing tenant to recover actual and penal damages in amount not to exceed actual damages if landlord "deliberately or negligently" violates provisions of AS 34.03.260 regarding disposition of property).

voluntary, binding, and final decision with regard to this litigation and the agreements . . . being made." Both James and Diane Cole testified that they were not under the influence of any substances. The mediator asked them to confirm that they both understood the agreement was "final and binding and enforceable." James Cole replied, "Yes, we do." On October 10 Fannie Mae filed a report to the court that a settlement had been reached. According to Fannie Mae, it has paid the mediation fees and tendered a $50,000 check to the Coles' attorney as required by the agreement.

On October 21 Fannie Mae moved to enforce the agreement and filed a transcript of the recorded settlement agreement. Fannie Mae argued that "[t]he Coles demonstrated an unequivocal acceptance and intent to be bound to the [settlement] agreement terms." The Coles opposed the motion, arguing that the "matter was fatally tainted by false representations made by [Fannie Mae's] process server." Diane Cole admitted that she received a writ of assistance, but the opposition claimed that she did not receive a notice of right to reclaim personal property and had confused the notice with the writ.

The Coles then argued that they had been fraudulently induced into entering the settlement agreement and that the agreement was therefore void. Diane Cole filed an affidavit acknowledging that she was present when the process server and a police officer came to the house and gave her a copy of the writ of assistance. But she stated that she was not given the notice and that she left the area the next day without ever receiving the notice.[7] She also stated that she believed that a photo which showed the notice being posted at the property, and was attached to the email the Coles' attorney received on September 16, 2019, was "a false and misleading creation." Finally, she

---

[7] *See* AS 34.03.260 ("[I]f . . . a tenant has left personal property upon the premises, and the landlord reasonably believes that the tenant has abandoned this personal property the landlord may . . . give notice to the tenant demanding that the property be removed within the dates set out in the notice but not less than 15 days after delivery or mailing of the notice . . . .").

claimed she was "misled at the mediation" and only agreed to settle because she thought having received the writ weakened their case.

Fannie Mae replied that the Coles "have put forth no facts to support a finding that there was a misrepresentation made at mediation." It asked the court to "implement the settlement reached on the record."

The superior court granted Fannie Mae's motion to enforce the settlement agreement and dismissed the Coles' action with prejudice; it also ordered the parties to bear their own costs and fees. The court observed that Diane "Cole asserts that the server fraudulently superimposed the Writ and Notice over a photo of the Cole's house to prove service," and that the Coles had "offered this allegedly augmented photo as an exhibit, explaining that their attorney received it in an email from opposing counsel on September 16, 2019." The court concluded that "[i]n doing so, the Coles have effectively admitted that their attorney had notice" three years before the Coles and Fannie Mae entered into the settlement agreement. The court noted that even if it found "that the process server acted fraudulently," it could not find that "the Coles justifiably relied on any alleged misrepresentation" when they agreed to the settlement. The Coles appeal.

## III.    STANDARD OF REVIEW

We analyze settlement agreements under traditional contract principles.[8] We apply our independent judgment to review questions of contract formation and

---

[8]    *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003) (citing *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999)).

interpretation in the absence of factual disputes.[9]  And we review factual findings for clear error.[10]

## IV.  DISCUSSION

To determine whether the settlement agreement is void because of misrepresentation in the mediation, we first look at the agreement.  The superior court determined that it is valid.[11]  The settlement agreement includes "an offer encompassing all essential terms"; there was "unequivocal acceptance by the offeree," with "consideration," and "an intent to be bound."[12]

Because the Coles do not challenge the superior court's conclusion that the settlement agreement is valid, they must demonstrate they were fraudulently induced to agree to settle their case to avoid the settlement agreement.  They "must show that (1) there was a misrepresentation; (2) the misrepresentation was fraudulent; (3) the misrepresentation induced [them] to enter into the contract; and (4) [their] reliance on the misrepresentation was justified."[13]

---

**9**  *Bingman v. City of Dillingham*, 376 P.3d 1245, 1247 (Alaska 2016) ("We review 'questions of contract formation and interpretation de novo' in the absence of factual disputes." (quoting *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014 (Alaska 2011))).

**10**  *Id.* (citing *Chilkoot Lumber Co.*, 252 P.3d at 1014 n.2).

**11**  In their brief's statement of issues for review the Coles asserted that the superior court erred by finding that they and Fannie Mae had entered into a settlement agreement, but they do not address it further.  The argument is therefore waived.  *See Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1104 (Alaska 2023) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (alteration in original) (quoting *Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016))).

**12**  *Chambers v. Scofield,* 247 P.3d 982, 987 (Alaska 2011).

**13**  *Indus. Com. Elec., Inc. v. McLees*, 101 P.3d 593, 599 (Alaska 2004) (first citing *Bering Straits Native Corp. v. Birklid*, 739 P.2d 767, 768 (Alaska 1987); and then citing RESTATEMENT (SECOND) OF CONTRACTS § 164 (1981)).

The Coles argue that they were fraudulently induced into the agreement because they did not receive proper notice of their ability to recover their personal belongings and because they did not discover this fraud until after they had agreed on the record to settle. But the Coles' complaint filed in August 2021 — more than a year before mediation — was based on their allegation that Fannie Mae had disposed of their personal property "without notice to the[m]." And the settlement agreement they reached in mediation required Fannie Mae to pay the Coles $50,000.00 "in full and final settlement for all claims that were made, could have been made, might have been made, [and] should have been made," including issues concerning notice.

Given that the Coles believed the notice they received was improper when they filed their complaint, the Coles must establish that the notice was fraudulent, induced them to agree to settle the case, and that their reliance on that fraud when they entered into the settlement agreement was reasonable. The Coles specifically allege that Fannie Mae's process server fraudulently superimposed the writ and the notice over a photo of the house that was sent to their attorney in September 2019. But as the superior court noted, "[i]n doing so, the Coles have effectively admitted that their attorney had the Notice as of September 16, 2019."

The Coles argue that *Industrial Commercial Electric, Inc. v. McLees*, requires us to reverse the superior court's order.[14] But the Coles' case does not resemble *Industrial Commercial Electric*: McLees, an employee of Industrial Commercial Electric, took company property, including documents and bank records, without permission and refused to return it.[15] McLees and the president of the company came to an oral agreement that McLees would return all of the property and that McLees would be paid for completing two ongoing projects, after which he would be terminated

---

**14** 101 P.3d 593 (Alaska 2004).

**15** *Id.* at 594.

from the company.[16]  They also "agreed to memorialize their oral agreement in a formal settlement agreement and mutual release."[17]  When all the property was not returned, the president filed a complaint asserting that the agreement was not enforceable.[18]  The superior court granted summary judgment to McLees, finding that he had not "acted coercively or fraudulently."[19]  We reversed, concluding there was a genuine issue of material fact concerning whether McLees' representation that he had returned all the company's property was false.[20]  We held further that a settlement could not be binding when a fraudulent misrepresentation induced a party to enter into the contract and that party's "reliance on the misrepresentation was justified."[21]

The Coles claim that the process server created the photograph that they allege was fraudulent, which their attorney received three years before the mediation. The Coles also claim that "there does not appear to be a dispute" that the alleged misrepresentation induced them to enter the settlement, and the superior court did not address this issue because it concluded that there was no fraudulent misrepresentation.

But it is undisputed that the Coles' attorney possessed the photograph in 2019.  An attorney's knowledge is imputed to his or her clients.[22]  Thus, the Coles are

---

[16]     *Id.* at 594-95.

[17]     *Id.* at 595.

[18]     *Id.* at 596.

[19]     *Id.*

[20]     *Indus. Com. Elec., Inc.*, 101 P.3d at 599-600.

[21]     *Id.* at 599-602.

[22]     *See Breck v. Moore*, 910 P.2d 599, 604-05 (holding that "[i]n suits against third parties, 'the plaintiff is generally charged with the lapses of attorneys acting in his behalf' " and that "[i]f [attorney] should have discovered [clients'] cause of action . . . then the [clients] are charged with this constructive discovery" (quoting *Pedersen v. Zielski*, 822 P.2d 903, 907 n.5 (Alaska 1991))); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("[A] client is ordinarily chargeable with his counsel's

deemed to have known all the facts that their attorney knew at the time of the mediation, including the photograph. Despite that knowledge, the Coles chose to participate in mediation; they cannot "later avoid accountability" on the same facts they are deemed to be aware of.[23] By relinquishing all claims "that were made, could have been made, might have been made, [and] should have been made" in the settlement agreement the Coles relinquished any claim that the photograph was fraudulent.

The superior court correctly determined that there was no genuine dispute as to whether there was a fraudulent misrepresentation. The superior court did not err by concluding that the settlement agreement is enforceable.

## V.   CONCLUSION

We AFFIRM the superior court's order enforcing the settlement agreement.

---

negligent acts. Clients are 'considered to have notice of all facts known to their lawyer-agent.' " (quoting *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989)); *see also Preblich v. Zorea*, 996 P.2d 730, 736 (Alaska 2000) (holding that where attorney "had or should have had knowledge of [client's] potential malpractice action against [former attorney]" before statute of limitations ran, attorney's knowledge was imputed to client for purposes of discovery rule).

[23]      *See Tani*, 282 F.3d at 1168 ("Because the client is presumed to have voluntarily chosen the lawyer as his representative and agent, he ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel.") (first citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); then citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993)).